```
             IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
                       EASTERN DIVISION
```

| | |
|---|---|
| BOARD OF TRUSTEES OF THE AUTOMOBILE MECHANICS' LOCAL NO. 701 UNION AND INDUSTRY PENSION FUND, ) ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | No. 13 C 484 |
| HENNESSY FORD, INC., et al., ) ) | |
| Defendants. ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

When this Court's colleague Honorable Suzanne Conlon elected to retire from the bench on May 31, the consequent random reassignment of the remaining cases on her calendar brought this action to the calendar of this Court. Its threshold look at the case revealed that it carried with it the baggage of a fully-briefed dispute between the litigants as to the enforcement of the withdrawal liability provisions of ERISA--more precisely, the Multiemployer Pension Plan Amendments Act ("MPPAA," 29 U.S.C. §§1381-1461).[1]

At this point no dispute exists between plaintiff Board of Trustees of the Automobile Mechanics' Local No. 701 Union and Industry Pension Fund ("Trustees") on the one hand and codefendants Hennessy, Inc. and River View Ford, Inc. on the

---

[1] All further citations to MPPAA will take the form "Section--," employing the section numbers in Title 29 but omitting the prefatory "29 U.S.C."

other as to the motion by those defendants to stay the proceedings against them pursuant to Section 1401(f)(2) until February 6, 2014[2] by reason of the pending arbitration proceedings as to the defendants' potential withdrawal liability. Nor will those codefendants be required to make withdrawal liability payments unless and until the arbitrator upholds the determination made by the employee benefit plan sponsor. Instead the only current issue that requires resolution here is as to the withdrawal liability vel non of codefendant River Oaks Ford, Inc. ("River Oaks"), a subject on which it and Trustees have submitted two memoranda apiece.

As River Oaks would have it, our Court of Appeals' 2010 decision in Cent. States Se. & Sw. Areas Pension Fund v. O'Neill Bros. Transfer & Storage Co., 620 F.3d 766 (7th Cir. 2010) has somehow trumped the long-established and uniformly applied "pay now, dispute later" mandate of MPPAA by holding that an assertedly withdrawing employer is entitled to a stay of judicial proceedings (and, most importantly, can hold off on the interim payment of the statutorily-defined installments of the disputed withdrawal liability) during the pendency of an arbitration brought to address substantive disputes between the parties. But that contention is dead wrong, for it violates the very

---

[2] As the cited statute makes clear, that is an outside date--if the arbitration produces a final decision in Trustees' favor by then, the stay may be terminated earlier.

principles of statutory construction that produced the typically thoughtful and thorough analysis by Judge Kenneth Ripple for the panel in the O'Neill case.

Here is the provision of MPPAA (Section 1399(c)(5)) that was at issue in O'Neill:

> In the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made. For purposes of this section, the term "default" means—
>
> > (A) the failure of an employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure, and
> >
> > (B) any other event defined in rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability.

Although the litigants' quarrel in that case related to the "second kind of default, commonly referred to as an 'insecurity default'" (620 F.3d at 771), the Court of Appeals--by way of contrast--also took the occasion to construe the provision that set out "the first kind of default, commonly referred to as a 'missed-payment default'" (id.). In the latter respect O'Neill, id. at 773-74 bought into the interpretation arrived at by the Pension Benefit Guaranty Corporation ("PBGC"), which had adopted a regulation providing that such a "default" does not occur until 61 days after the disputes between an employer and the plan

sponsor that they have submitted to arbitration (Section 1401(a)(1)) have been ruled on by the arbitrator.

But what River Oaks glosses over--or more likely prefers to ignore--is that the statutorily-defined "default" involves an acceleration of the <u>entire</u> withdrawal liability, while Trustees have not asked for that--instead they seek only the <u>interim installment payments</u> on account of such claimed liability. Note the striking difference between those enforcement efforts.

As to any <u>total</u> acceleration of claimed withdrawal liability (the subject of the "default" provisions quoted both in <u>O'Neill</u> and earlier in this opinion), it is surely reasonable to require "a substantial likelihood that an employer will be unable to pay its withdrawal liability" (Section 1399(c)(5)(B), extended to subsection (A) by the construction adopted by PBGC and now by our Court of Appeals). In total contrast, Section 1401--the very provision that calls for the resolution of disputes between employers and plan sponsors through arbitration (Section 1401(a)(1))--expressly specifies what the employer must do until the arbitrator issues a final decision. Here is Section 1401(d):

> Payments shall be made by an employer in accordance with the determinations made under this part until the arbitrator issues a final decision with respect to the determination submitted for arbitration, with any necessary adjustments in subsequent payments for overpayments or underpayments arising out of the decision of the arbitrator with respect to the determination.

And that "pay now, dispute later" mandate is echoed in Section

4

1399(c)(2), part of the section that establishes the employer's obligation to make interim quarterly payments on account of asserted withdrawal liability while any substantive disputes are being arbitrated.

In short, the same principles of statutory construction that flow from the premise that Congress knew what it was doing when it set up the structure for dealing with withdrawal liability (the premise that drove the O'Neill decision) also confirm that Congress knew what it was doing when it provided for mandatory interim payments (not total acceleration of the type provided for in a typical mortgage note or other installment note) when it <u>omitted</u> any provision for putting a benefit plan and its participants at risk while the parties fought out the substantive issues through arbitration.

Indeed, River Oaks' attempted reliance on the O'Neill decision is torpedoed entirely by our Court of Appeals' reaffirmance, a year <u>after</u> that decision came down, of the "pay now, dispute later" principle in precisely the same context that is posed here. Here is an excerpt from <u>Nat'l Shopmen Pension Fund v. DISA Indus., Inc.</u>, 653 F.3d 573, 576 (7th Cir. 2011)(emphasis added) that could well have been written for this case:

> As we have said time and again, <u>an employer is almost always required to make payments</u> while it seeks review of a fund's calculation of withdrawal liability, see §1399(b)(2)(A), or pursues arbitration, see

5

> §1401(a)(1).  <u>Central States, Se. and Sw. Areas Pension Fund v. Hunt Truck Lines, Inc.</u>, 272 F.3d 1000, 1002-03 (7th Cir. 2001). This is to ensure that the pension plan remains solvent while the parties resolve their dispute—a process that can take many years. To this end, the MPPAA requires an employer to make interim payments "in accordance with the schedule set forth by the plan sponsor...notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule." §1399(c)(2).  If the employer defaults by failing to make the appropriate payments, see §1399(c)(5)(A), matters progress in one of two ways.  Assuming that the employer refuses to make "interim" liability payments, meaning while arbitration is pending, the plan may file suit to collect only the interim payments, not the entire amount.

Importantly, that quoted language is followed by a quotation from Section 1399(c)(5) that spells out the contrasting alternative identified in <u>O'Neill</u>, under which a "default" as defined there entitles a plan sponsor to require immediate payment of an employer's <u>total</u> withdrawal liability in case of a "default" as defined there.  Simply put, for River Oaks' counsel to promote <u>O'Neill</u> under the circumstances reflects either seriously flawed research or, if counsel was aware of <u>Nat'l Shopmen</u> but failed to cite it, seriously flawed lawyering (and see Ill.S.Ct. RPC Rule 3.3(a)(2)).

<u>Conclusion</u>

   For the reasons set out in this memorandum opinion and order:

>    1.  Hennessy, Inc.'s and River View Ford, Inc.'s joint motion to stay the proceedings against them pursuant to

Section 1401(f) is granted until February 6, 2014.

    2. River Oaks Ford's corresponding motion to stay the proceedings against it is denied.

    3. River Oaks Ford, Inc. is ordered, during the pendency of the existing arbitration proceedings, to pay all interim installments on account of its asserted withdrawal liability, with the timetable for payment of the past-due installments to be set at the next status hearing.

    4. This action is set for a next status hearing at 9:15 a.m. July 11, 2013.

At the next status hearing the parties should also come prepared to discuss Trustees' motions for a turnover order (Dkt. 46) and for summary judgment against River Oaks Ford, Inc. (Dkt. 51), although the latter of those two motions might well be rendered superfluous by the rulings in this opinion.

                                          _____
                                          Milton I. Shadur
                                          Senior United States District Judge

Date: June 25, 2013